UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

TAMMY JAMES and KEITH JAMES,

    Plaintiffs,

-VS-                              CASE NO.: 3:18-cv-698

DISH NETWORK L.L.C and
CONVERGENT OUTSOURCING INC.,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs, TAMMY JAMES (individually "Mrs. James") and KEITH JAMES (individually "Mr. James") (collectively "Plaintiffs"), by and through the undersigned counsel, and sues Defendants, DISH NETWORK L.L.C. (hereinafter "Defendant, Dish") and CONVERGENT OUTSOURCING INC., (hereinafter "Defendant, Convergent") (collectively "Defendants") and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like Defendants from invading American citizen's privacy and prevent abusive "robo-calls."

1

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8.  The alleged violations described herein occurred in Russell County, Alabama. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.  Plaintiffs are natural persons, and citizens of the State of Alabama, residing in Russell County, Alabama.

10. Plaintiffs are "consumers" as defined in 15 U.S.C. § 1692(a)(3).

11. Plaintiffs are "alleged debtors."

12. Plaintiffs are the "called parties." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

13. Defendant, Dish, is a corporation which was formed in Colorado with its principal place of business located at 9601 South Meridian Boulevard, Englewood, Colorado 80112 and which conducts business in the State of Alabama through its registered agent, Corporation Service Company Inc., located at 641 South Lawrence Street, Montgomery, Alabama 36104.

14. Defendant, Convergent, is a corporation which was formed in Washington with its principal place of business located at 800 Southwest 39th Street, Renton, Washington 98057 and which conducts business in the State of Alabama through its registered agent, C T Corporation System, located at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

15. Convergent, is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

16. The debt that is the subject matter of this complaint is a "consumer debt" as defined by U.S.C. § 1692(a)(5).

17. Defendants collectively called Plaintiffs on their respective cellular telephones approximately three hundred fifty (350) times in an attempt to collect a debt.

18. Defendants attempted to collect an alleged debt from the Plaintiffs by this campaign of telephone calls.

19. Defendants intentionally harassed and abused Plaintiffs on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

20. Upon information and belief, some or all of the calls the Defendants made to Plaintiffs' cellular telephone numbers were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiffs will testify that they knew it was an auto-dialer because of the vast number of calls they received;

because they heard a pause when they answered their cellular telephones before a voice came on the line; because they received prerecorded messages; and lastly, on several calls, there would not be anyone on the line when they answered.

21. Plaintiff, Mrs. James, is the subscriber, regular user and carrier of the cellular telephone number (706) ***-7360 and was the called party and recipient of Defendants' calls.

22. Plaintiff, Mr. James, is the subscriber, regular user and carrier of the cellular telephone number (706) ***-7020 and was the called party and recipient of Defendants' calls.

23. On several occasions over the last four (4) years, Plaintiffs instructed Defendants' agents to stop calling their respective cellular telephones.

24. In November of 2017, Mrs. James asked the Defendants to "not call her anymore". She was informed by Defendants' agent/representative that the debt was sixty (60) days past due and the collections department would continue to call.

25. Despite Mrs. James clearly and unequivocally revoking any consent Defendants may have believed they had to call, the Defendants' auto-dialer calls to Mrs. James cellular telephone continued.

26. In November of 2017, Mr. James told the Defendants "if we can't get the fee waived, then stop calling". He was informed by Defendants' agent/representative that they "were going to continue to call, because we need to collect the debt."

27. Despite Mr. James clearly and unequivocally revoking any consent Defendants may have believed they had to call, the Defendants' auto-dialer calls to Mr. James cellular telephone continued.

28. Upon receipt of the calls from Defendants, Plaintiffs' caller ID identified the calls were being initiated from, but not limited to, the following telephone numbers: (877) 839-0829, (706) 940-5090, (706) 940-5060, (706) 940-5030, (706) 251- 9262, and (706) 251- 9088.

29. Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to the Plaintiffs' cellular telephones in this case.

30. Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiffs' cellular telephones in this case, with no way for the consumer, or Defendants, to remove the numbers.

31. Defendants' corporate policies are structured as to continue to call individuals like the Plaintiffs, despite these individuals explaining to Defendants they wish for the calls to stop.

32. Defendants have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

33. Defendants have numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being requested to stop.

34. Defendants have numerous complaints from consumers against them across the country asking to not be called, however the Defendants continue to call the consumers.

35. Defendants' corporate policies provide no means for the Plaintiffs to have their numbers removed from the call list.

36. Defendants have a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

37. None of the Defendants' telephone calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

38. Defendants willfully and knowingly violated the TCPA with respect to the Plaintiffs.

39. From each and every call placed without express consent by Defendants to Plaintiffs' respective cellular telephones, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

40. From each and every call without express consent placed by Defendants to Plaintiffs' respective cellular telephones, Plaintiffs suffered the injury of the occupation of their cellular telephone lines and cellular telephones by unwelcome calls, making the telephones unavailable for legitimate callers or outgoing calls while the telephones were ringing from Defendants' call.

41. From each and every call placed without express consent by Defendants to Plaintiffs' cellular telephones, Plaintiffs suffered the injury of unnecessary expenditure of their time. For calls they answered, the time they spent on the call was unnecessary as

they had repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiffs had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular telephones, which are designed to inform the user of important missed communications.

42. Each and every call placed without express consent by Defendants to Plaintiffs' respective cellular telephones was an injury in the form of a nuisance and annoyance to Plaintiffs. For calls that were answered, Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular telephones, which are designed to inform the users of important missed communications.

43. Each and every call placed without express consent by Defendants to Plaintiffs' respective cellular telephones resulted in the injury of unnecessary expenditure of Plaintiffs' respective cellular telephones' battery power.

44. Each and every call placed without express consent by Defendants to Plaintiffs' respective cellular telephones where a voice message was left which occupied space in Plaintiffs' telephones or network.

45. Each and every call placed without express consent by Defendants to Plaintiffs' respective cellular telephones resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular telephones and their cellular telephone services.

46. As a result of the calls described above, Mrs. James suffered an invasion of privacy. Mrs. James was also affected in a personal and individualized way by stress, anxiety, and increased blood pressure.

47. As a result of the calls described above, Mr. James suffered an invasion of privacy. Mr. James was also affected in a personal and individualized way by anger and embarrassment.

## COUNT I
### (Violation of the TCPA by Defendant, Dish Network, L.L.C.)

48. Plaintiffs fully incorporate and re-allege paragraphs one (1) through forty seven (47) as if fully set forth herein.

49. Defendant, Dish Network, L.L.C., willfully violated the TCPA with respect to the Plaintiffs, especially for each of the auto-dialer calls made to Plaintiffs' respective cellular telephones after Plaintiffs notified Defendant, Dish Network, L.L.C., that they wished for the calls to stop.

50. Defendant, Dish Network, L.L.C., repeatedly placed non-emergency telephone calls to Plaintiffs' respective cellular telephones using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendants, DISH NETWORK, L.L.C., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the TCPA by Defendant, Convergent Outsourcing, Inc.)

51. Plaintiffs fully incorporate and re-allege paragraphs one (1) through forty seven (47) as if fully set forth herein.

52. Defendant, Convergent Outsourcing, Inc., willfully violated the TCPA with respect to the Plaintiffs, especially for each of the auto-dialer calls made to Plaintiffs' respective cellular telephones after Plaintiffs notified Defendant, Convergent Outsourcing, Inc., that they wished for the calls to stop.

53. Defendant, Convergent Outsourcing, Inc., repeatedly placed non-emergency telephone calls to Plaintiffs' respective cellular telephones using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demands a trial by jury on all issues so triable and judgment against Defendants, CONVERGENT OUTSOURCING, INC., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FDCPA by Defendant, Convergent Outsourcing, Inc.)

54. Plaintiffs fully incorporate and re-allege paragraphs one (1) through forty seven (47) as if fully set forth herein.

55. At all times relevant to this action CONVERGENT OUTSOURCING, INC., is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

56. CONVERGENT OUTSOURCING, INC., has violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

57. CONVERGENT OUTSOURCING, INC., has violated 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

58. CONVERGENT OUTSOURCING, INC. has violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against CONVERGENT OUTSOURCING, INC., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

Jason R. Derry, Esquire
Florida Bar No.: 36970
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 257-0577
JDerry@ForThePeople.com
JKneeland@ForThePeople.com
*Attorney for Plaintiff*